## SMITH v. CALLAWAY.

The Court of Appeals did not err in affirming the judgment of the lower court.

No. 3661. MARCH 1, 1924.

Certiorari; from Court of Appeals. *29 Ga. App.* 565.

On August 28, 1919, A. A. Smith entered into a written contract to sell E. A. Callaway certain nitrate of soda. The contract follows:

"Sold to Mr. E. A. Callaway, Rayle, Ga. By A. A. Smith, Atlanta, Ga.

"Quantity fifty short tons nitrate soda 200 lb. bags Ga. tags.

"Port Savannah or Charleston. Expected arrival January, 1920.

"Price ($65.25) sixty-five dollars and twenty-five cents per ton 2000 lbs. f. o. b. cars Washington, Ga.

"Terms, cash sight draft, bill of lading attached.

"Analysis, guaranteed 95% nitrate soda on analysis furnished by the importers, with customary west coast allowance if below the guarantee. Under the following conditions:

"Tons to be each of 2000 lbs. gross weight, delivered, of South America nitrate of soda, for shipment, for the West Coast of South America, by steamer or equivalent sailers, expected due to arrival at the port, or ports, during the months, and at the price, and on the terms above mentioned, it being sellers' privilege to ship to any Atlantic or Gulf port other than the port or ports named above, in which case the seller will equalize the freight to buyers' works on such quantity so shipped, sellers to have the option of making equivalent deliveries ex vessel and/or ex store, and/or shipping the nitrate for delivery under this contract, from any port of the United States.

"Vessel's name to be given as soon as convenient, sellers reserving the option of substituting another vessel, in approximately similar position, or of making equivalent delivery ex vessel and/or ex store. Should a vessel be lost or commandeered after being named, seller to have the privilege of substituting another vessel and to give prompt notice of such substitution to buyers; but if no substitution is made, that portion of the contract shipped on the vessel lost or commandeered is cancelled. In the event of any damage to, jettison, or loss of cargo of a vessel named under this contract, the quantity originally named to buyers, per such vessel, is to be reduced in the same proportion as the entire quality of the same grade

which has been shipped by such vessel is reduced by such damage, . jettison, or loss, provided the balance of her cargo is brought forward to original destination by and/or for sellers' account. No arrival, no sale. Should any vessel, vessels, engaged by the sellers to fill this contract, be lost, commandeered or damagèd prior to sailing and before or after declaration is made, a reasonable time is to be allowed them to substitute another vessel, or sellers to have the option of cancelling any portion of this contract so affected.

"This nitrate is sold for shipment via Panama Canal. In the event of the Panama Canal being closed, sellers to have the option of deferring shipment and/or arrival of nitrate under this contract until after the canal is reopened [to?] navigation.

"Nitrate to be taken by buyers, when ready for delivery ex vessel, and/or ex store, as above in original uneven weight single bags in customary good order. Sworn weights at port of discharge to be taken as basis of settlement.

"This contract is not transferable.

"Each lot to be treated as a separate sale or contract.

"Wharfage and transfer charges, if any, at port of arrival shall be for account of buyer.

"Any differential or other duty imposed by the United States Government upon the merchandise covered by this contract shall be for account of buyer. Should the Chilean export duty be increased, such increase is to be paid by buyers to sellers on all nitrate delivered under this contract that has become liable to same.

"The nitrate delivered under this contract to be paid for in cash in New York funds, in United States gold or its equivalent in currency.

"In case of war, or other causes, endangering the transportation of nitrate of soda, sellers have the right to cancel any part of this contract so affected. Seller has the right to insure the nitrate sold under this contract, against war risk for account of buyer.

"Sellers not responsible for contingencies beyond their control.

"Analysis or inspection tags, if required, to be furnished by buyer, or seller has the right to furnish at buyer's expense."

On June 26, 1920, the buyer brought suit against the seller for damages for breach of the contract. The petition alleged, that in the latter part of February or early in March the defendant shipped from Savannah, Georgia, to the petitioner at Washington, Georgia,

fifty tons of nitrate of soda duly consigned to the order of defendant, with notation on the bill of lading of sight draft on petitioner for the purchase-price; that the shipment did not reach petitioner, but was destroyed in transit; and that a demand was made upon defendant for fifty tons of nitrate of soda in compliance with the contract, which demand was refused, the defendant stating by. telegram of March 6, 1920: "Your wire sixth received we must decline to replace carload of nitrate soda title to car was in you at time of loss and the matter rests solely between you and the railroad." Petitioner avers, that the title had not passed to him; that there was no delivery, and defendant has refused to fulfill his contract; that at the date of the breach the market price of nitrate of soda at Washington was a stated amount; that the defendant could have supplied the nitrate by purchase on the market; and that by reason of the breach of contract petitioner has been damaged in a stated sum (which was not alleged to be but was equal to the difference between the purchase price and the market price at Washington, Georgia, at the date of the breach). The defendant answered, denying the breach of the contract, and alleging that he shipped nitrate of soda in full compliance with the contract, "under special instructions given by plaintiff . . modifying the terms of the contract." By amendment to the answer he alleged, that "the nitrate sold . . to plaintiff was destroyed while on route to plaintiff and while on the railroad between Elberton and Brick House, Georgia; that said nitrate was in a car and both said car and said nitrate were in the control and custody of the common carrier; that at the time the defendant was not in possession or control of said nitrate, and its loss and destruction was due to a contingency beyond defendant's control; . . that the executory contract of [sale] sued on by plaintiff . . expressly provides that this defendant is not responsible for contingencies beyond his control." At the trial term the defendant's oral motion to dismiss the petition on the ground that it set forth no cause of action was overruled, and he excepted pendente lite. At the conclusion of the evidence his motion for direction of a verdict in his favor was overruled, and he excepted pendente lite. The case having been submitted to the jury, a verdict was returned finding for the plaintiff a sum less than the amount sued for. The defendant's motion for a new trial was overruled, and he excepted. Error was also assigned on the exceptions pendente lite. The judgment of

the trial court was affirmed by the Court of Appeals, and the case came to the Supreme Court by writ of certiorari.

*Smith, Hammond & Smith,* for plaintiff in error.

*Lillle, Powell, Smilh & Goldstein* and *W. A. Slaton,* contra.

ATKINSON, J.    The term "no arrival, no sale," as employed in the contract, refers to the arrival of the vessel bringing the goods to this country, and not to delivery by the seller to the purchaser by rail after the vessel has reached the port of entry in this country. The controlling question brought for review by the assignments of error alleged in the petition for certiorari is whether the defendant was guilty of a breach of the contract.    The contention is that the contract was not breached, because the clause in the contract, "Sellers not responsible for contingencies beyond their control," comprehends a loss occurring under the circumstances of this case, and excuses the failure to deliver.    The circumstances are, that the nitrate of soda was shipped strictly in accordance with the original contract as modified by subsequent agreement of the parties, made at the request of the plaintiff for his convenience; and that the nitrate and car in which it was contained were destroyed by fire while in possession of the railroad, which was being operated by the United States Government.    The modification of the contract extended to changing of destination from Washington, Georgia, to Brick House, a prepay station about five miles beyond Washington. The shipment moved over the Central of Georgia Railway from Savannah to Washington, where it was turned over to the Elberton and Eastern Railroad to be carried to Brick House.    It was destroyed between Washington and Brick House.    The loss of the nitrate in these circumstances was not a "contingency" within the meaning of the contract.    Notwithstanding the modification of the contract, the goods were consigned to the shipper's order, with draft for the purchase-money attached to the bill of lading.    In these circumstances the possession of the railroad was the shipper's possession relatively to the consignee, and as to him the presumed negligence of the railroad was the negligence of the shipper.    A loss by negligence imputable to the shipper is incompatible with "contingency beyond" the shipper's "control."    In this view there is no merit in the assignment of error upon the judgment of the Court of Appeals.

*Judgment affirmed.    All the Justices concur, except Hines, J., dissenting.*